Good morning. May it please the Court, my name is Livia Morales from the Federal Defender's Office on behalf of Mr. Gary Stubbs, the appellant. Before starting, I would like to clarify a couple of things. I'm having just a tiny bit of trouble hearing, so maybe if you can just speak up a little bit, it would be helpful. Thank you. I would like to clarify two things. I would like to start off by referring the Court to page 24 of the government's reply brief. Halfway through the first paragraph in discussing its assertion that Mr. Stubbs waived his First Amendment argument by declining to be re-sentenced by Judge Kellison, the trial judge, the government writes, quote, Moreover, the defendant, though pro se, was advised throughout the appeal by a Federal Defender's staff attorney who was standing at his elbow at the podium. End of quote. I am the staff attorney referred to in the brief, and this statement is a mischaracterization. As I was not present at the time, Judge England, the district court, gave Mr. Stubbs the option of returning to Judge Kellison for re-sentencing. I had another court matter. I was not appointed in this case, and I had to leave halfway through Mr. Stubbs' oral argument. And so the point of that is that his waiver was not knowing or intelligently made? Is that it? Yes, Your Honor. The point is you weren't there. Well, right. The first point is that I wasn't there. That goes to your argument. That's what you're trying to argue. It leads me to my second point, and that is that, again, the government writes on page 24 that he knew that if his case was not remanded for re-sentencing, then he would be accepting the sentence as imposed. End of quote. And again, this is untrue. Mr. Stubbs had explained to the district judge on appeal that he didn't know how the process worked. Well, that's part of what he said. You know, you keep referring to the same line where he said he didn't know how it worked. It seems to me, overall, he knew exactly how it worked, and even to the point of bargaining with the district judge about how he could posture himself best for appeal. Well, Your Honor, he based his decision not to return to Judge Kellison, and he was afraid that Judge Kellison would impose a harsher penalty. And despite the fact that he showed at least some apparent confusion, the district court never explained to him what consequences, if any, he faced by waiving to or deciding, declining to go back to Judge Kellison. Let me ask you a question, if I may. Put aside the notion of waiving the First Amendment issue, okay, do you agree that he clearly waived a remand unless he got, he went to Kellison, he did not go to, was not sent back to Kellison? Your Honor, Mr. Stubbs, to me, based on the transcript, appeared confused when given the option of returning to Judge Kellison. He flatly said, I don't want to go back into the frying pan. I don't want to go to Judge Kellison. I don't want to go back to Judge Kellison. And I'm not talking about whether he waived his First Amendment right. I'm just concentrating solely on remand to Judge Kellison. Yes, Your Honor. At that point, he had not requested to return to a different judge. However, he didn't request to go back to Judge Kellison. In the letter that we wrote, that I wrote to Mr. Stubbs advising him on what issues to raise, we never advised him, or there's no assertion there that we were requesting or that he was requesting to go back. So are you saying you actually were advising him, or you weren't? Oh, well, at the point, at the oral argument, we were not, I was not advising him. No, but you wrote him a letter, right? Yes, Your Honor. Did you, did he at any time object to the condition of probation that it violated his First Amendment rights? He did say that had he had an opportunity to, to allocution, he would have argued that a $100 fine was more appropriate, because in all the previous cases dealing with the same issue, that's what defendants had been charged, imposed, sentenced with. But see, that's what the district court judge was giving him an opportunity to do now, to go back to the magistrate judge and exercise his right to allocation so that he could make that objection. And that's what he waived. Does the record tell us what interaction Mr. Stubbs had with the Rainbow family outside of these annual meetings in the national parks? Outside of the meetings? Right, the annual meetings in the parks. No, Your Honor. So is that the limit of his associational rights, that the rights he would have to join with these folks in the park each year? He was banned from associating with any annual gathering, from attending any family, Rainbow family gathering. Which are traditionally in the national parks? I'm not sure if they're traditionally in national parks, but from what I understand, a majority of the gatherings do occur in national parks. But there would be no social interaction other times of the year in other venues, just the parks or the annual meeting? Just the annual meeting. So if they occurred in someone's backyard, in state parks, in the church or wherever it may be, Mr. Stubbs was banned from attending those gatherings. But does the record tell us whether there were such possibilities for association outside of the national parks? No, Your Honor. The record does not show that. Well, with regards to that issue, the right to allocution and whether he waived his right to allocution, it is separate and apart from his First Amendment issue. One moment. It's separate and apart from his First Amendment issue because if the sentence violated his First Amendment right, freedom of association, then it's an illegal sentence. And by having waived his right to allocution, that would be a separate and distinct issue. Whether or not it was a necessary condition of probation or whether or not it's even a good one, why is it unconstitutional? Because courts have frequently upheld restrictions on the people with whom the convicted defendant can't associate. And this is reasonably related to his acting up only when with this group. Well, defendant's association rights or restrictions on defendant's association rights are valid if the restrictions are designed to meet the ends of rehabilitation or the protection of the public. And the restrictions are reasonably related to those ends. I know, and I just asked why these aren't reasonably related because he acted up only when he was with this group. Well, most cases have upheld association. Was there evidence in the record that he acted up only when he was with this group? No, Your Honor. There's no evidence. No evidence of his associational activities at all, right? Yes, Your Honor. Well, he didn't have any prior record, right? Yes, Your Honor. So the only time he got into trouble, so far as the record discloses, is when he was with the Rainbow Group and had his kitchen operating in the National Park, right? Well, Your Honor, there's nothing else. Well, forget the only, okay? Okay. Look, here's what I'm trying to get you to focus on. I know what the abstract law is, okay? I'm just trying to get you to tell me, in your own words, why it is that this condition was not reasonably related to what happened, which was building a kitchen within 300 miles of a stream and getting pretty excited about the Forest Service's attempts to get him to move it. Well, the trial, the evidence suggests that other members of the Rainbow family were also not in compliance with the permit. And as soon as they found out, they readily complied with the orders and moved their kitchens to where they were supposed to be set up. And so this shows that other members, in fact, were encouraging or were a good influence on Mr. Stubbs. His conduct on that day was separate and apart from his membership or his membership with the Rainbow family. There's nothing to indicate that the Rainbow family encourages violent behavior or illegal conduct as other cases the Ninth Circuit has upheld where the Ninth Circuit has upheld these associations. So I would like to reserve the remainder of my time for rebuttal, thank you. Ms. Spangler. May it please the Court. I'm Samantha Spangler, Assistant U.S. Attorney. And I attended the proceedings regarding the Rainbow family gathering in 2004 that occurred in Likely, California, as well as the trial in this case. I was supervising a law student who was handling that as a certified student prosecutor. And Judge Selma, in response to your question regarding the annual gathering, it's actually in the National Forest, not the National Park, for whatever that matters. We've cited a case, Black v. Arthur, in our brief that talks about the history of the gathering has occurred for, well now, about 30 years on National Forests throughout the country. The government did cite in its brief, I'm sorry I didn't find the exact location where it did, about a website where Mr. Stubbs is active in communicating with the Rainbow family members on that website. And so basically he has the communications with them, although he was barred from attending any Rainbow gathering or event. He was not barred from communicating with them. Is the Rainbow family equivalent to a biker gang or the Irish Republican Army? No. Their stated purpose is to hold an annual gathering in the National Forest for the purpose of praying for peace. So the performance of a criminal act wouldn't further their interests? I'm sorry, what? The performance of a criminal act violating the permit, violating the reg, it wouldn't further the Rainbow family's interest, would it? No it would not. There was evidence at the trial, and I would refer the Court to page, I believe it's 180, yes, of the SCR5, which is the trial transcript where Mr. Stubbs was talking about how the law enforcement officers being in their church, which is a reference to in the National Forest, wearing guns. And there is this conduct, and it's periodically referred to throughout the transcript, where violence occurs where the law enforcement officer is present and tries to enforce some sort of law enforcement action, like an arrest or something, and the Rainbow members gather in close, and they have just huge numbers surrounding the few law enforcement officers creating a dangerous situation. On this incident on page 80, Mr. Stubbs is talking about how he makes a big to-do every time law enforcement officers come near him. He starts calling them Nazis and shouting for Shana Sema, which is for the Rainbow members to gather around and help exhibit numbers in a threatening manner. The difficulty I've got here is that the magistrate judge plainly erred by not, by sentencing in Stubbs' absence. That's right, and the government concedes that. Yeah, well, yeah, I would suppose so. So, the pickle is, what do we do about it? I mean, the district judge obviously recognized it and did the right thing by saying, you know, you're entitled to state your position, and I'll remand for you to do it. And Stubbs basically said, I don't want to go back to that magistrate. The district judge tried to get him to do it. He said, no, I don't want to go back to that magistrate. But I don't understand that to be exactly the same as waiving his First Amendment claim. He just didn't want to go back to Kellison. So he sure gave up that much of the right, but I'm not sure what we do about it. Well, Your Honor, the, to the extent the Court is concerned about this occurring in the future, Judge Kellison has corrected his procedure so that he no longer does this sentence. I'm not worried about the future. I'm worried about this case. As to this particular case, the magistrate, or the district judge, made it perfectly clear what Mr. Stubbs' options were. He said, he even talked with him about the, if you go back for allocution, you have the right to raise this First Amendment claim that you're raising now. And Mr. Stubbs thought about it, and there was a lot of dialogue back and forth between the district judge and Mr. Stubbs about whether he would accept the sentence as it was, and by doing that, waive any things he would have raised on allocution. And instead, go back and see Judge Kellison and have his right of allocution and possibly convince Judge Kellison to impose a different sentence. So. But the district court judge did have the option of sending him to an, I mean, when Mr. Stubbs made comments like, sending me back to Kellison is like throwing me back into the fire. I have no doubt he's going to give me a stiffer sentence. I mean, the district court judge could have used that as a basis for saying, well, why don't I send you back to another judge for sentencing? That would not have been judicially economical in the sense that it was Judge Kellison who was charged with managing this entire gathering. And he was the one who was ultimately familiar with all of the details of this, this thing, not just from Mr. Stubbs' perspective, but from everything else that happened at the gathering that came to court in any event. And it was Judge Kellison who had conducted the trial. If it went back to a different magistrate judge, then that magistrate judge would have to review the entire trial transcript and and all the materials and then proceed to a sentencing. And yes, that could have happened, but there was no reason for Judge England to consider that when he wasn't asked to send the defendant back to some other magistrate judge. And the government's position is, had Mr. Stubbs asked him to do that, Judge England may very well have said no, and he may very well have relied on the very Ninth Circuit authority that I've cited in this brief that says that it's only in particular circumstances when it's appropriate to reassign it to a different judge than the trial judge. And the government's position is the defendant has not made the showing that he would be entitled to that, even if he had made the argument, which he did not do. I also wanted to mention to the court that I think you get a greater flavor for this case by reading the entire trial transcript, which is why I've included the entire thing as the supplemental excerpt of the case. Judge Stubbs testified himself about attending numerous rainbow gatherings where he operated kitchens. For example, SCR page or SCR 5 at page 179. And also Doc Wilson and Charles Fick testified regarding the defendant having kitchens at other gatherings. So Judge Pallison was well aware of contact that that the defendant had had at other gatherings. And it was the defendant in fact, who put into evidence as exhibits of his numerous reports about contact he had had with law enforcement agents that the government didn't try to put into evidence and wouldn't have been able to put into evidence had we tried about incidents that occurred where no ticket was even written to him. No criminal conduct was resulted in a arrest or a citation. And this is further evidence that supports the magistrate judge's determination that the appropriate penalty was to cause Mr. Stubbs to step back and have some time off from the gathering to think about behaving more appropriately when he's there in the future. And by missing two gatherings last year, which he did not attend, and this year, which has yet to come up, and I understand maybe in Colorado, then this gives him a break from it so that he can have time to think about it. And perhaps he can comport his behavior more appropriately when he's there in the future. But the problem is that the magistrate judge went further than that because what he said is that he could not, he was prohibited from attending, he was prohibited from attending any rainbow event or gathering, including but not limited to the annual summer gathering. That's true. And the, my understanding is that the other gatherings consist of planning for the annual gathering, but it's that the annual gathering is the primary thing. Similarly to Burning Man, that there may be planning meetings throughout the year about where to hold the gathering and that sort of thing. But they don't, the main thing is the annual gathering. I don't know that I can point to anything in the record relating to that other than that there was, there was a, I don't, I don't know. I just don't know of anything in the record. It's just, I'm sorry for going over, but it's just so odd that we're not, I don't know. I have trouble reading the clock too, but it's so odd that the district court judge said clear error, no under rule 32, no right to allocation, but I'm going to affirm and send it to the ninth circuit. Well, he gave Mr. Stubbs, I mean, he ruled clearly that he was going to remand it for allocution and resentencing. And it was Mr. Stubbs who then said, no, I don't want to. And then they negotiated about it. Thank you, Your Honor. Okay. Ms. Morales. First, I would like to point out that there is no evidence in the record showing that the Rainbow family members encouraged Mr. Stubbs from illegal, to engage in illegal conduct or to place his kitchen in some other place. There was also no evidence showing that members gang up on law enforcement when they walk in with weapons. Second, Mr. Stubbs did, tell the district court judge that he did not want to go return to judge Callison. That was an indication that he would have preferred to go to appear before another judge. And finally banning Mr. Stubbs from attending any Rainbow gatherings does not protect the public in any way, given that the restriction does not address building kitchens in national forest land outside of Rainbow gatherings. So he could likely return to a national forest land and engage in the same conduct. The restriction is all overbroad as well, because here, like I said earlier, Mr. Stubbs cannot attend Rainbow gatherings that occur outside of state, outside of the national forest parks, such as someone's backyard or other locations. A more reasonably related sentence could have been prohibiting Mr. Stubbs from, from building kitchens or having kitchen facilities at annual gatherings held in national forest lands. So for these reasons, request remand. For resentencing. Thank you. Okay. Thank you. Counsel. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Senna